**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARNELL JOHNSON | Criminal Action No. 21-424 (MAS)<br><br>**MEMORANDUM OPINION**<br>(Under Temporary Seal) |

**SHIPP, District Judge**

This matter comes before the Court on the United States of America's (the "Government") Motion *in Limine*. (ECF No. 63.) Defendant Marnell Johnson ("Johnson") opposed (ECF No. 66), and the Government replied (ECF No. 67). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1, which is applicable to criminal cases under Local Criminal Rule 1.1. For the reasons below, the Court grants in-part and denies in-part the Government's Motion.

**I.   BACKGROUND**

A search of an apartment at 752 Ocean Avenue in Long Branch (the "752 Ocean Apartment") revealed bricks, bags, and boxes. In the living room, agents from the Drug Enforcement Administration ("DEA") uncovered five bricks of heroin and a box of small rubber bands. Lurking on a table in the bedroom was an ink stamp bearing the word "sick," a blue ink pad, one thousand small bags of heroin, a larger bag of heroin, and a box of small baggies. Officers further unearthed a digital scale and loaded handgun in a drawer of that bedroom table.

As to who leased the 752 Ocean Apartment, the parties disagree. The Government argues that Defendant Johnson resided at the 752 Ocean Apartment with his girlfriend Tia Jones. Johnson counters that Jones was the sole lessor of the apartment. That disagreement further animates who owns the drugs and the loaded handgun. The Government contends that the contents belong to

Johnson—who admitted that "anything in the [apartment] belonged to him" to a DEA agent during his arrest. (Gov't's Opp'n Br. to Def.'s Mot. to Suppress 3, ECF No. 46.)[1] Johnson suggests that Jones owned the contraband, as she was the only person in the apartment during the search. (*See* Def.'s Opp'n Br. 7, ECF No. 66 ("Tia Jones lived at 752 Ocean Avenue, Mr. Johnson did not. And Ms. Jones was in the apartment where the search warrant was executed, Mr. Johnson was not.").)

Whatever the case may be, the Government filed a criminal complaint against Johnson, asserting crimes under 21 U.S.C. § 841 for possessing a controlled substance with intent to distribute (Count I) and under 18 U.S.C. § 922(g) for possessing a firearm as an individual formerly convicted of a felony (Count II). (*See generally* Compl., ECF No. 1.) A grand jury later returned an indictment for a third charge under 18 U.S.C. § 924(c) for possessing a firearm in furtherance of a drug trafficking crime (Count III). (Indictment 3, ECF No. 27.)

At issue now are four controlled drug buys that occurred in the two months before the DEA search. They include (1) a February 13, 2020 sale of ten bricks of heroin for $1,000 at 764 Ocean Avenue in Long Branch, (2) a February 20, 2020 sale of twenty bricks of heroin for $2,000 at 764 Ocean Avenue, (3) a March 6, 2020 sale of twenty bricks of heroin for $2,000 at Sternberger Avenue in Long Branch, and (4) an April 6, 2020 sale of twenty bricks of heroin for $2,000 at 764 Ocean Avenue (collectively, the "Drug Transactions"). The Government contends that Johnson sold heroin to an undercover DEA agent in each Drug Transaction and that the undercover agent advised that "Johnson carried a handgun on his person." (Gov't's Opp'n Br. to Def.'s Mot. to Suppress 1.)[2] In addition, although not at issue now, the Government also proffers that Johnson

---

[1] Notably, Johnson's post-arrest statements are inadmissible at trial as the Government has not put forth adequate proof that DEA agents gave Johnson *Miranda* warnings.

[2] The Court notes, however, that the undercover agent appears to have reached that conclusion in January 2020, before the first Drug Transaction.

was involved in a March 25, 2020 incident in Neptune City, where security cameras captured Johnson "briefly removing a black handgun from his sweatshirt pocket." (*Id.* at 2.)

## II. LEGAL STANDARD

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Federal trial courts often find it appropriate to rule on pre-trial *in limine* motions to exclude or admit certain evidence so that "the court can shield the jury from unfairly prejudicial or irrelevant evidence." *Ebenhoech v. Koppers Indus., Inc.*, 239 F. Supp. 2d 455, 461 (D.N.J. 2002) (citing *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988)). "The *in limine* motion then fosters efficiency for the court and for counsel by preventing needless argument at trial." *Id.* "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United States v. Perez*, No. 09-1153, 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 139 (2d Cir. 1996)).

## III. DISCUSSION

The Government seeks a preliminary determination of admissibility for two categories of evidence. First, it seeks to admit the four Drug Transactions under Rule 404(b) as evidence of Johnson's ownership, control, knowledge, and possession of the heroin and handgun found in the 752 Ocean Apartment. (Gov't's Moving Br. 7-20, ECF No. 63.) Second, it seeks to admit Johnson's prior felony convictions to support its felon-in-possession charge. (*Id.* at 20-24.) The Government further proposes to bifurcate the trial, whereby the jury would decide Counts I and III in the first phase and Count II in the second phase. (*Id.* at 20-21.) Johnson responds that the Drug Transactions are improper 404(b) evidence and that he will likely stipulate to the prior felonies.

(Def.'s Opp'n Br. 1 & n.1.)[3] In addition, he does not oppose a bifurcated trial. (Gov't's Moving Br. 20-21 ("The Government has conferred with counsel for the defendant, who agrees that the § 922(g)(1) count should be bifurcated at trial.").)

The Court first considers the propriety of the parties' request to bifurcate the trial. The Court need not dwell here as it agrees that bifurcation is appropriate. Under Federal Rule of Criminal Procedure 14, the Court has discretion to bifurcate when "joinder of offenses . . . appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a); *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993) ("Rule 14 . . . leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." (citations omitted)). To that end, numerous courts endorse bifurcating felon-in-possession charges from other counts to avoid the inherent prejudice from evidence of a defendant's prior felonies. *See, e.g.*, *United States v. Tullies*, No. 18-21, 2018 WL 5994591, at *3 n.3 (D.N.J. Nov. 14, 2018) ("The evidence of those felon-in-possession charges was bifurcated so that the jury would not be prejudiced by knowledge of the prior felony convictions when deliberating on the other counts of the Indictment."); *United States v. Dunbar*, No. 20-424, 2022 WL 79622, at *5 & n.41 (E.D. Pa. Jan. 7, 2022) ("The Third Circuit has endorsed bifurcated trials where certain counts, such as felon-in-possession charges under 28 U.S.C. § 922(g)(1), rely on the introduction of evidence that could be prejudicial to a defendant's trial on other charges." (citing *United States v. McCode*, 317 F. App'x 207, 210 (3d Cir. 2009))). The Court concludes that the same rationale applies here: evidence of Johnson's prior felonies—which include prior drug crimes—could work substantial prejudice against him when the jury considers

---

[3] As the parties appear to agree on stipulating to Johnson's prior felonies, the Court denies the Government's motion for admission of those felonies as moot. Should the stipulation fall through, however, the Government may renew its motion.

Counts I and III. The Court thus agrees with the parties and bifurcates the trial so that the jury will consider Counts I and III in the first phase and Count II in the second phase.

Turning to the heart of the Government's Motion, the Government moves for a determination that the Drug Transactions are admissible as non-propensity evidence under Rule 404(b) for Counts I and III. Under that Rule, the Government must first identify a non-propensity purpose for the at-issue evidence and then "explain how the evidence is relevant to that purpose." *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014). The Government must "explain how [the evidence] fits into a chain of inferences—a chain that connects the evidence to a proper purpose, no link of which is a forbidden propensity inference." *Id.* at 276-77 (quoting *United States v. Davis*, 726 F.3d 434, 442 (3d Cir. 2013)). Mere relevance, however, is not enough for admission. The Court must also evaluate with "great care" whether the inherent prejudice substantially outweighs the probative value of the at-issue evidence. *Id.* at 277 (citations omitted). Further, even if the Court admits the evidence, it must provide a limiting instruction to ensure that the jury understands the evidence's limited purpose. *Id.* (citing *Davis*, 726 F.3d at 445).

The Court first considers the Drug Transactions in the context of Count I. Plainly, the Drug Transactions are probative and not unduly prejudicial. The Government proffers clear non-propensity purposes and a clear chain of inferences for those purposes. Specifically, the Government seeks to admit the Drug Transactions to show that Johnson owned and knew about the drugs found at the 752 Ocean Apartment and intended to sell those drugs. These are proper non-propensity purposes. *See* Fed. R. Evid. 404(b)(2); *United States v. Rojo*, 374 F. App'x 285, 287 (3d Cir. 2010). Similarly, the Government explains that the Drug Transactions are significantly probative because they show that the drugs sold to the undercover agent bore the same "sick" stamp and blue ink as the stamp and ink found at the 752 Ocean Apartment—classic identity evidence. (Gov't's Moving Br. 10-11.) In addition, the Government explains that DEA

5

agents observed Johnson leaving the 752 Ocean Apartment before making two of the Drug Transactions. (*Id.* at 11.) These explanations adequately elucidate how the Drug Transactions show a non-propensity purpose. *See United States v. Jackson*, 619 F. App'x 189, 193-94 (3d Cir. 2015) (affirming district court's admission under Rule 404(b) of prior drug transactions to show knowledge, intent, and background).

Similarly, admission of the evidence is not unduly prejudicial to Johnson. True, some risk always exists that the jury may consider the Drug Transactions for improper propensity purposes. Tempering that risk, however, is the prejudice the Government faces from excluding the Drug Transactions from trial. That is especially so because Johnson appears to put at issue whether he resided at the 752 Ocean Apartment and whether he owned the drugs and drug paraphernalia. (*See* Def.'s Opp'n Br. 7 ("Tia Jones lived at 752 Ocean Avenue, Mr. Johnson did not. And Ms. Jones was in the apartment where the search warrant was executed, Mr. Johnson was not.").) Declaring the probative Drug Transactions unduly prejudicial to Johnson therefore substantially negates the Government's ability to counter Johnson's third-party culpability defense. Further, the Court can cure the prejudice Johnson faces through a proper limiting instruction. *See Caldwell*, 760 F.3d at 277 (noting that district court should instruct "the jury that the evidence is admissible for a limited purpose and may not be considered in another manner").

Whether the same evidence is admissible to prove Count III is a closer call. Under 18 U.S.C. § 924(c), the Government "must demonstrate that possession of the firearm advanced or helped forward a drug trafficking crime." *United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004). To that end, the Government can show

> the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

*Id.* (quoting *United States v. Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir. 2000)). Critically, however, the Government cannot rely on "[t]he mere presence of a firearm," which "is not by itself sufficient to show possession in furtherance of drug trafficking." *United States v. Sangster*, No. 19-3273, 2021 WL 2974635, at *4 (3d Cir. July 15, 2021) (quoting *Sparrow*, 371 F.3d at 853); *see also Ceballos-Torres*, 218 F.3d at 414 ("The 'mere presence' test is one based on generality—anytime a drug dealer possesses a gun, that possession is in furtherance, because drug dealers generally use guns to protect themselves and their drugs.").

Considering this guidance, the Court carefully reviews the relevance and potential prejudice of the Drug Transactions to show possession of a firearm in furtherance of a drug trafficking crime. To start, the Court concludes that the Drug Transactions are probative but only minimally so. The Government proffers that the Drug Transactions help show that Johnson possessed the gun. But the chain of inferences linking the Drug Transactions to the firearm found at the 752 Ocean Apartment is weak. According to the Government, the two are linked because (a) officers found the gun in the same table as the blue ink pad and "sick" stamp that was ultimately imprinted on the drugs sold in the Drug Transactions, and (b) officers found the gun in the same house Johnson left before two of the Drug Transactions. The Court struggles to follow this chain particularly because the logic echoes the mere-presence generality—any gun found in a drug dealer's residence must mean it facilitates drug crimes. *But see United States v. Law*, No. 05-78, 2005 WL 3464449, at *5 (E.D. Pa. Dec. 16, 2005) ("[E]ven if defendant was a 'street-level drug seller' at some time prior to his arrest, it does not necessarily follow that he possessed the gun that was seized in order to protect himself and his drugs."). Nevertheless, because several of the Drug Transactions occurred within close proximity of the 752 Ocean Apartment, the Court cannot say that the Drug Transactions have no tendency to show that Johnson's gun possession was more

probable. The Drug Transactions are thus minimally relevant to show that Johnson possessed the gun in furtherance of drug trafficking.

Relevance notwithstanding, the Court concludes that the Drug Transactions are unduly prejudicial. For one, the Government does not need the Drug Transactions to show the in-furtherance-of element. The gun was loaded and found near other illicit drugs: one pull of a table drawer away from being fired. These facts help prove the Government's case without the inherently prejudicial Drug Transactions. *See United States v. Arzola*, 361 F. App'x 309, 313 (3d Cir. 2009) (affirming § 924(c) conviction where police officers discovered a loaded pistol beneath defendant's nightstand and near cocaine). Further, in this context, the Drug Transactions are especially prejudicial because the Government has proffered no evidence that Johnson possessed the gun during the Drug Transactions.[4] Without that proffer, the Court reasons that the jury will likely infer that Johnson always possessed the gun to facilitate those Drug Transactions. At this stage, the Court will not allow that propensity inference and will issue an instruction limiting evidence of the Drug Transactions to Count I only.[5]

---

[4] Although not at issue in the Government's motion, at this stage, the Court is not persuaded that the DEA agent's statement that Johnson always possessed a gun defeats the inherent prejudice of the Drug Transactions. The DEA agent made that statement in January 2020, before the Drug Transactions occurred. Similarly, the Government does not argue that the March 25, 2020 incident in Neptune City should bear on the Court's disposition.

[5] Of course, the Court's ruling today is preliminary and "subject to change as the case unfolds." *Perez*, 2011 WL 1431985, at *1. Should the Government proffer additional evidence at trial that establishes a non-propensity and non-prejudicial chain of inferences, the Court will reconsider its ruling.

## IV.   CONCLUSION

The Court will issue an order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

9