**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 21-424 (MAS) |
| v. | **MEMORANDUM OPINION** |
| MARNELL JOHNSON | |

**SHIPP, District Judge**

This matter comes before the Court on Defendant Marnell Johnson's ("Johnson") Motion for Judgment of Acquittal and, alternatively, Motion for a New Trial under Federal Rules of Criminal Procedure 29 and 33.[1] (ECF No. 91.) The United States of America (the "Government") opposed (ECF No. 93), and Johnson replied (ECF No. 94).[2] The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1, which is applicable to criminal cases under Local Criminal Rule 1.1. For the reasons below, the Court denies Johnson's Motions.

**I.   BACKGROUND**

    **A.   Charged Offenses**

In May 2021, a federal grand jury returned an Indictment against Johnson on three charges: (1) possession with intent to distribute a controlled substance, in violation of 21 U.S.C.

---

[1] Hereinafter, all references to a "Rule" or "Rules" refer to the Federal Rules of Criminal Procedure.

[2] The deadlines for Rule 29 and 33 motions are coordinated. "A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c). "Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Civ. P. 33(b)(2). Johnson's motions were timely filed within the fourteen-day period. *See* Gov't's Opp'n Br. 8 n.4, ECF No. 93 ("The [G]overnment agrees that Johnson's motion is timely.").

§§ 841(a)(1) and (b)(1)(C) (Count One); (2) possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) (Count Two); and (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Three). (*See generally* Indictment, ECF No. 27.) The parties agreed to bifurcate the counts; the Court jointly tried Counts One and Three in the first phase of trial, and the Court tried Count Two in the second phase.[3] (*See* Mot. to Bifurcate 20-21, ECF No. 63.)

### B. Jury Trial

The Court held a consecutive four-day jury trial from July 11, 2022, through July 14, 2022. (*See* ECF Nos. 74-89.) The Government called as witnesses law enforcement officers, detectives, a special agent of the Drug Enforcement Agency ("DEA") and the Department of Homeland Security, and an expert in narcotics. (*See* Trial Tr. vol. 1 *16:2-19, ECF No. 99; *see generally* "Index," Trial Tr. vol. 2, ECF No. 100.)[4] The Court summarizes the evidence presented by the parties at trial as follows.

Between mid-February and April 2020, periodic surveillance showed Johnson exiting or entering an apartment (the "Apartment") leased by Tia Jones ("Jones") five or six times. (*See* Trial Tr. vol. 1 *13:15-19; *id.* vol. 2. *71:17-*72:-6.) The address of the Apartment is 752 Ocean Avenue, Apartment 39, Long Branch, New Jersey. (*Id.* vol. 2 *10:25-*11:18.) On four occasions, a law enforcement confidential source ("CS"), acting at the direction of and under the supervision of the DEA, purchased heroin from Johnson in video- and audio-recorded transactions near or in

---

[3] Hereinafter, Counts Two and Three will be referred to as the "Firearm Possession Counts."

[4] Page numbers preceded by an asterisk refer to the page numbers atop the ECF header.

close proximity to the Apartment.⁵ (*Id.* *43:12-25; *44:1-24; *57:20-25; *67:10-*69:1-12; *74:6-20.) During two of the sales, DEA agents observed Johnson exit the apartment complex and travel to an agreed-upon location. (*See id.* *184-*94.) Special Agent Michael Goldfinger, the Government's case agent (*see id.* *5:16-17; *6:19-24), as well as other law enforcement officers physically surveilled and observed each controlled transaction. (*See, e.g., id.* *47:7-*49:11.) On one occasion, DEA agents observed Johnson exit the Apartment, get into a vehicle registered to Jones, and remain there for several minutes. (*Id.* *163:21-165:12.) On April 8, 2020, the morning of his arrest, Johnson was seen walking a dog at around 7:00 a.m. (*Id.* *212:18-*213:22 ("Shortly after 7:00, Mr. Johnson exited the apartment with the dog, took the dog around real quick to go to the bathroom, and then brought the dog back inside.").) DEA agents had previously seen Johnson walking the same dog during two of the controlled transactions. (*See, e.g., id.* *50:1-8; *69:1-2; *167:9-23; *168:19-21; *203:23-*204:2.)

In executing a search warrant for the Apartment, a DEA agent encountered Jones sitting on a couch in the living room, actively packaging heroin on a coffee table from which five bricks of heroin, tape, and a box of small rubber bands were recovered. (*Id.* *77:14-22; *78:8-17; *see also* Gov't Ex. 110, ECF No. 93-4.)⁶ In the adjoining bedroom, officers found a small table from which they recovered an ink stamp with the word "sick" imprinted on it, a blue ink pad, approximately 25 grams of packaged heroin, 26 grams of loose heroin, and a box of empty glassine envelopes. (Trial Tr. vol. 2 *106-*137; Gov't Exs. 102-A, 106-A, 106-B, 110, 111, 112, ECF Nos. 93-1 to

---

⁵ The four prior controlled drug sales were uncharged and, thus, introduced at trial as prior bad acts for a limited purpose with respect to Count One only. (*See* Trial Tr. vol. 1 *22:2-13.)

⁶ Counsel certified that the stipulations and exhibits provided to the jury were accurate and properly before the jury. (Exs. Cert., ECF No. 84.)

93-6.) In the drawer of that same table, officers located a digital scale and a .380 caliber Diamondback handgun loaded with six rounds of ammunition. (Trial Tr. vol. 2, *86:3-24; Gov't Exs. 114 & 119, ECF Nos. 93-7 & 93-8.) A pair of men's shoes appears visible in a photo of the bedroom table. (Trial Tr. vol. 2 *83; Gov't Ex. 112.) After the Government rested its case-in-chief, Johnson argued that the Government had failed to prove beyond a reasonable doubt that Johnson knew about or had control of the firearm. (Trial Tr. vol. 3 *55:9-22, ECF No. 101.) Johnson moved under Rule 29(a) for a judgment of acquittal as to Count Three, which the Court denied following the jury's verdict in an Order filed on July 18, 2022. (*See* Order, ECF No. 90.)

The jury deliberated for about three hours and ten minutes before returning a guilty verdict on Counts One and Three, and for approximately ten minutes before returning a guilty verdict on Count Two. (*See* ECF Nos. 79-88.)

Johnson now renews his motion for judgment of acquittal of Count Three, requesting the Court to reconsider its July 18, 2022 Order denying judgment of acquittal as to that count, and moves for judgment of acquittal of Count Two, both pursuant to Rule 29(c). (*See generally* Def.'s Moving Br., ECF No. 91-1.) Alternatively, Johnson moves under Rule 33 for a new trial on the Firearm Possession Counts of the Indictment. (*Id.*) At bottom, Johnson does not challenge the sufficiency of the evidence for Count One but argues that he did not have knowledge or possession of the firearm as required for the Firearm Possession Counts. (*Id.*)

**II.    LEGAL STANDARD**

    **A.    Motion for Judgment of Acquittal**

Rule 29(a) provides that "[a]fter the government closes its evidence . . . , the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is

insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "[W]hen a court reserves decision on a motion for judgment of acquittal[,] 'it must decide the motion on the basis of the evidence at the time the ruling was reserved[.]'" *United States v. Taylor*, 559 F. App'x 122, 124 n.3 (3d Cir. 2014) (quoting Fed. R. Crim. P. 29(b)).

The Court's review is deferential, as it is not the Court's place to weigh evidence or determine credibility. *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998). "[A] defendant who asserts that there was insufficient evidence to sustain a conviction shoulders 'a very heavy burden.'" *United States v. Tiangco*, 225 F. Supp. 3d 274, 278-79 (D.N.J. 2016) (quoting *United States v. Anderson*, 108 F.3d 478, 481 (3d Cir. 1997)). "In ruling on a motion for judgment of acquittal, the [d]istrict [c]ourt reviews the record 'in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt[] beyond a reasonable doubt based on the available evidence.'" *United States v. Ollie*, 624 F. App'x 807, 811 (3d Cir. 2015) (alteration in original) (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)). "A finding of insufficiency should be confined to cases where the prosecution's failure is clear." *Brodie*, 403 F.3d at 133 (internal quotations omitted) (citation omitted).

**B.      Motion for a New Trial**

Under Rule 33(a), the Court may vacate any judgment and grant a new trial if the interest of justice so requires. Fed. R. Crim. P. 33(a). Evidence is not viewed favorably to one side or the other—instead the Court "exercises its own judgment." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002).

A district court "can order a new trial only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *United*

5

*States v. Silveus*, 542 F.3d 993, 1004-05 (3d Cir. 2008) (internal quotation marks and citation omitted). A new trial is required when evidentiary errors "so infected the jury's deliberations that they had a substantial influence on the outcome of the trial." *United States v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1993) (internal quotation marks and citation omitted); *see also United States v. Amirnazmi*, 648 F. Supp. 2d 718, 720 (E.D. Pa. 2009), *aff'd*, 645 F.3d 564 (3d Cir. 2011) (A new trial will be granted "if a defendant proves (1) that error occurred at trial, and (2) that error had a substantial influence on the verdict." (citation omitted)). "Motions for a new trial based on the weight of the evidence are not favored." *United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003) (quoting *Gov't of Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987) (alterations adopted)). Rule 33 motions are "granted sparingly and only in exceptional cases." *Silveus*, 542 F.3d at 1005 (internal quotation marks and citation omitted).

### III. DISCUSSION

As mentioned, Johnson moves for judgment of acquittal or, in the alternative, for a new trial on the Firearm Possession Counts. (*See generally* Def.'s Moving Br.) In support of these motions, Johnson argues that the jury returned a verdict against the weight of the evidence because the Government presented insufficient evidence to meet its burden on the Firearm Possession Counts. (*Id.* at 5-9.) Specifically, Johnson contends that the Government failed to prove beyond a reasonable doubt that Johnson "knowingly possessed a firearm." (*Id.*) According to Johnson, because the evidence "simply showed that he was 'merely present' in a location that appeared near to where a gun was found in a closed drawer of someone else's apartment," the Government failed to prove that he knowingly possessed the firearm. (*Id.* at 8.) And since the Government failed to

prove "one of the essential elements" of the Firearm Possession Counts, Johnson contends that the Court should discard the jury's verdict or at least order a new trial. (*Id.* at 8-9.)

The Government counters, unsurprisingly, that the evidence well supported the jury's conclusion that Johnson knew about and possessed the firearm. (Gov't's Opp'n Br. 2.) Indeed, the Government argues that it proved "substantially more" than Johnson's mere presence at the Apartment on April 8, 2020, through its presentation of evidence establishing, for example, that Johnson distributed heroin in the vicinity of the Apartment, which he had access to. (*Id.* at 9-11.) The Government avers that the jury's verdict was based on reasonable inferences that Johnson and Jones were actively packaging heroin for redistribution in the Apartment, and that Johnson was doing so from the bedroom table, while Jones was doing so from the living room. (*Id.* at 11.) From there, the jury was permitted to draw the inference that Johnson knew about and controlled the items in the drawer of the bedroom table—the loaded gun and drug paraphernalia; in other words, that Johnson constructively possessed the firearm. (*Id.*) For those reasons, the Government urges the Court to deny Johnson's motions.

    **A.**    **Johnson Fails to Meet his Burden to Show that the Verdict Must be Set Aside.**

With respect to Count Two, the Government was tasked at trial with proving "beyond a reasonable doubt: (1) that [Johnson] had previously been convicted of a crime punishable by imprisonment for a term exceeding one year; (2) that [Johnson] knowingly possessed a firearm; and (3) that the firearm had passed in interstate commerce." *United States v. Dodd*, 225 F.3d 340, 344 (3d Cir. 2000), *as amended* (Oct. 27, 2000). With respect to Count Three, the Government was required to prove beyond a reasonable doubt, *inter alia*, that Johnson knowingly possessed the firearm in furtherance of the drug trafficking crime. 18 U.S.C. § 924(c)(1)(A). Johnson contests

the sufficiency of evidence to prove the possession with knowledge element of the Firearm Possession Counts. (Def.'s Moving Br. 5.) The Court disagrees with Johnson.

Possession of an object, such as a firearm, can be actual or constructive. *See United States v. Caldwell*, 760 F.3d 267, 278 (3d Cir. 2014) (possession of a firearm for purposes of § 922(g)(1) can be constructive); *United States v. Walker*, 657 F.3d 160, 172 (3d Cir. 2011) (same for § 924(c)). As Johnson points out, the Government offered no proof that he actually "exercised direct physical control over the weapon[s,]" *Caldwell*, 760 F.3d at 278, so, consequently, the issue before the Court is whether there was evidence sufficient to establish constructive possession. (*See* Def.'s Moving Br. 8.) "A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it." *United States v. Garth*, 188 F.3d 99, 112 (3d Cir. 1999) (emphasis and citations omitted). Constructive possession requires (1) "dominion and control" over an object, and (2) knowledge of the object's existence. *United States v. Iafelice*, 978 F.2d 92, 96 (3d Cir. 1992). A person's dominion and control over an item need not be exclusive. *Garth*, 188 F.3d at 112. Notably, "while the location of a firearm is admittedly relevant, immediate accessibility at the time of search or arrest is not a legal requirement for a § 924(c) conviction . . . . In fact, a number of courts have upheld § 924(c) convictions when the firearm in question was not easily or immediately accessible." *United States v. Sparrow*, 371 F.3d 851, 853-54 (3d Cir. 2004), *as amended* (Aug. 3, 2004).

As with many questions of fact, constructive possession depends upon context, probabilities, and common sense. *See United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (*en banc*) ("[W]e review the evidence as a whole, not in isolation . . . ."). Most

importantly, a jury may use circumstantial evidence to support reasonable inferences of fact. *See United States v. McNeill*, 887 F.2d 448, 450 (3d Cir. 1989) ("Inferences from established facts are accepted methods of proof when no direct evidence is available so long as there exists a logical and convincing connection between the facts established and the conclusion inferred."). Where there is no proof of actual possession, circumstantial evidence may supply the basis for finding constructive possession: "[The Court] may sustain a conviction even when the government's case rests entirely upon circumstantial evidence." *United States v. Mitchell*, 229 F. App'x 153, 156 (3d Cir. 2007) (quoting *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006)). The Third Circuit has ruled that "[d]ominion and control are not established . . . by 'mere proximity to the [object], or mere presence . . . where it is located or mere association with the person who does control the [object].'" *United States v. Jenkins*, 90 F.3d 814, 818 (3d Cir. 1996) (quoting *United States v. Brown*, 3 F.3d 673, 680 (3d Cir. 1993)); *compare Brown*, 3 F.3d at 680 (finding "mere proximity" insufficient because defendant merely resided in a drug "cut house"), *and Jenkins*, 90 F.3d at 816 (finding "mere proximity" insufficient for defendant seated at a coffee table with drugs, paraphernalia, and firearms), *with Jackson v. Byrd*, 105 F.3d 145, 150 (3d Cir. 1997) (finding constructive possession of drugs discovered in a separate room of the apartment for which defendant was the lessee and had access to all parts of), *and United States v. Basley*, 357 F. App'x 455 (3d Cir. 2009) (finding constructive possession based on circumstantial evidence of the defendant's control over the residence, coupled with the fact that "the [gun] was found in a drawer, with men's clothing, surrounded by [defendant's] intimate personal effects").

As discussed above, the Government here presented evidence at trial that Johnson regularly accessed the Apartment during two months of periodic surveillance. (*See, e.g.*, Trial Tr. vol. 2,

\*128:1-10.) In executing a search warrant of the Apartment, law enforcement officers witnessed Jones packaging heroin in the living room and recovered large amounts of drugs and drug paraphernalia. (*Id.* \*76:23-\*77:22; *see* Gov't Ex. 110.) In the bedroom, DEA agents found a small table containing more drugs and drug paraphernalia, a handgun, and men's shoes nearby. (*Id.* \*85-\*105; Gov't Exs. 102-A, 106-A, 106-B, 110, 111, 112, 114, 119.) Thus, the Government presented circumstantial evidence that Johnson had control over the residence, plus additional circumstantial evidence as a whole from which the jury could reasonably find constructive possession of the firearm. The plethora of evidence establishing that Johnson had control of the drugs, as well as the presence of men's shoes in the vicinity of the gun, drugs, and drug paraphernalia, establishes strong circumstantial evidence that Johnson knowingly possessed the firearm. *See Walker*, 993 F.2d at 200 ("Based on the close proximity of both the gun and ammunition to drugs, and the gun's location near the couch where [the defendant] had been lying, a rational jury could have found beyond a reasonable doubt that [the defendant] was prepared to use the gun."). Having already convicted Johnson of distributing drugs, a finding which Johnson does not dispute, a rational juror could have easily inferred a link to the firearm.

It is the province of the jury to evaluate evidence and assess credibility. It did so here. Johnson's disagreement with the jury's factual findings does not, alone, render the evidence insufficient. Although "other inferences are possible from the evidence, . . . that circumstance does not justify [the Court] in rejecting the jury's verdict." *United States v. Sandini*, 888 F.2d 300, 311 (3d Cir. 1989), *cert. denied*, 494 U.S. 1089 (1990); *accord Iafelice*, 978 F.2d at 97 n.3 ("There is no requirement . . . that the inference drawn by the jury be the only inference possible or that the government's evidence foreclose every possible innocent explanation."); *see also Caraballo-*

*Rodriguez*, 726 F.3d at 432 (reversing "the jury's conclusion simply because another inference is possible—or even equally plausible—is inconsistent with the proper inquiry for review of sufficiency of the evidence challenges"). In sum, the Court upholds the jury's verdict on the Firearm Possession Counts.

The Court, accordingly, denies Johnson's Motion for Judgment of Acquittal, as he fails to meet his heavy burden in challenging the sufficiency of evidence supporting his conviction.

B.  **Johnson Fails to Meet his Burden to Demonstrate that a New Trial is Warranted.**

Having detailed above the depth and thoroughness of the Government's evidence, the Court finds no manifest injustice or extraordinary circumstance that warrants a new trial. *United States v. Miller*, 765 F. App'x 752, 756 n.4 (3d Cir. 2019) ("Because [defendant] cannot prevail on *de novo* review of his acquittal motion . . . [the court] finds no abuse of discretion in the [district court] denying [defendant's] new trial motion on the same grounds." (citing *United States v. Franz*, 772 F.3d 134, 158 (3d Cir. 2014))). The Court's independent review of the evidence finds that justice does not require a new trial. *Silveus*, 542 F.3d at 1004 ("Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case."). Thus, the Court denies Johnson's Motion for a New Trial.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Johnson's Motion for Judgment of Acquittal and, alternatively, Motion for a New Trial under Rules 29 and 33. The Court will enter an Order consistent with this Memorandum Opinion.

／s／ *Michael A. Shipp*
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**